# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MARGARET ASH,**

        **Plaintiff,**

v.                                                 Case No. 11-C-0900

**MICHAEL J. ASTRUE,**
**Commissioner of the Social Security**
**Administration,**

        **Defendant.**

## DECISION AND ORDER

The Plaintiff, Margaret Ash ("Ash"), appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her February 7, 2008, application for Social Security Disability Insurance Benefits for lack of disability. Ash claims that she became disabled for purposes of the Social Security Act as of August 21, 2007. The March 23, 2010, decision of Administrative Law Judge ("ALJ") Mary L. Everstine became the final decision of the Commissioner on August 19, 2011, when the Appeals Council denied Ash's request for review.

The Social Security Act authorizes disability benefits for those who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical and/or mental impairments prevent her from doing not only her previous work, but any other substantial gainful employment which exists in the national economy considering her age, education and work experience. 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant is disabled, the Commissioner has established a five-step sequential analysis. *See* 20 C.F.R. § 404.1520.

At step one, the ALJ who conducted Ash's March 9, 2010, administrative hearing, determined that Ash has not engaged in substantial gainful activity since August 21, 2007. At step two, the ALJ found that Ash has the following severe impairments: mild degenerative disc disease of the cervical spine; status post decompression torn cartilage of her right wrist; pain disorder associated with both psychological and general medication condition; and an adjustment disorder with mixed anxiety and depressed mood. At step three, the ALJ determined that Ash does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, which the Commissioner acknowledges to be conclusively disabling. At step four, the ALJ determined that Ash has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except for rapid-paced, high-production quota operations. Relying in part on the testimony of a vocational expert, Sharon Spaventa, the ALJ concluded that Ash would be capable of performing her past relevant work as a customer service representative for a waste management company. The ALJ also determined that, in the alternative, at step five, Ash would

2

be able to perform a significant number of jobs in the national economy given her age, RFC, and her work experience.

On review, the Court will overturn the Commissioner's final decision only if it lacks support by substantial evidence, is grounded in legal error, or is too poorly articulated to permit meaningful review. *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000). The Court views the record as a whole but does not reweigh the evidence or substitute its judgment for that of the ALJ. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). The ALJ is not required to address every piece of evidence or testimony presented, but must provide a "logical bridge" between the evidence and his conclusions. *See Myles v. Astrue,* 582 F.3d 672, 674 (7th Cir. 2009); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

Citing *Moss v. Astrue,* 555 F.3d 556, 560 (7th Cir. 2009), Ash maintains that the ALJ erred when she rejected the State Agency's conclusion and that of the treating psychologist, Marc W. Zylstra ("Zylstra"), Ph.D., of the Midwest Rehabilitation Associates Chronic Pain Management Program that Ash was limited to unskilled simple work. Ash asserts that the ALJ substituted her own judgment for a physician's opinion without relying on other medical evidence of record. *See Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir. 1996).

3

The ALJ "rejected the opinions of the State agency consultant at Exhibit 15F finding that [Ash] has multiple moderate mental limitations[1] and is restricted to unskilled work, concluding that the "findings [were] unsupported by the objective evidence of record, including the lack of significant on-going therapy." (Tr. 20). Instead, the ALJ limited Ash to no rapid-paced work or high production quotas, given the evidence in the record that Ash had some deficits in concentration and focus as reflected at page 85 of exhibit 18F. (Tr. 542.) The ALJ also cited Ash's testimony that she has trouble with deadlines and work pressures.

The ALJ did not mention the similar finding made by Zylstra, who became involved in Ash's care in January 2008. Zylstra and William A. Stewart ("Stewart"), M.D., who is board-certified in neurology and physical medicine and rehabilitation (Tr. 552-53), jointly authored a March 1, 2010, medical opinion,[2] which states:

> From a psychological view, I believe [Ash] has reached a point where any full time competitive employment would have to be of a simple routine nature. She should avoid work which is fast paced or which requires sustained concentration. She continues to struggle with a somatic focus on her physical discomfort which would likely worsen if she had the stress of anything other than simple job tasks.

(Tr. 553.)

---

[1] This finding conflicts with the ALJ's step three determination that "with regard to concentration, persistence or pace, [Ash] has moderate difficulties." (Tr. 18.)

[2] Page one of the medical report is dated March 1, 2010, and page two is dated March 1, 2009. (*See* Tr. 552-53.) However, based on the report's reference to a June 11, 2009, electrodiagnostic study, the correct year of the report is 2010.

4

Although the ALJ's decision cited Zylstra's initial psychological evaluation of Ash (part of exhibit 5F) (Tr. 330-35), she did not discuss Zylstra's continuing involvement with Ash's treatment. After an extensive evaluation of Ash on January 14, and 21, 2008, including a lengthy interview and psychological testing, Zylstra diagnosed Ash with a pain disorder associated with both psychological factors and a general medical condition, and an adjustment disorder with mixed anxiety and a depressed mood. (Tr. 334.) Zylstra also provided a global assessment of functioning ("GAF") score of 58.[3] (*Id.*) He recommended that Ash participate in an interdisciplinary chronic pain management program. (Tr. 334-35.)

Zylstra was involved in the six-week outpatient pain management program in which Ash engaged. (Tr. 462-65.) Subsequently, Zylstra provided follow-up care for Ash on June 2, 2008 (Tr. 459, 461); July 7, 2008 (Tr. 599); September 26, 2008 (Tr. 594); January 26, 2009 (Tr. 590); May 26, 2009 (Tr. 586); and September 11, 2009 (Tr. 576, 578). The notes of those sessions indicate that Zylstra counseled Ash regarding various aspects of her chronic pain management. (*See* e.g., Tr. 592.) Ash was also taking prescription medications for her chronic pain disorder. (Tr. 72.)

The ALJ did not articulate her evaluation of Zylstra's findings according to the applicable criteria for the opinion of a treating source. *See Moss*, 555 F.3d at 561. This

---

[3] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. *American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed., Text Rev. 2000). A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.* at 34.

omission is significant because a treating source's opinion about the nature and severity of the claimant's impairment is normally given controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is consistent with substantial evidence in the record. *Id*. at 560 (citing 20 C.F.R. § 404.1527(d)(2);[4] *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008)). In deciding how much weight to accord a treating source's opinion, the ALJ should consider various factors, like how often the treating source has examined the claimant, whether the source is a specialist in the condition claimed to be disabling, and so forth. 20 C.F.R. § 404.1527(c); *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010); *Hofslien v. Barnhart,* 439 F.3d 375, 377 (7th Cir. 2006). Because the ALJ's opinion did not contain any such discussion of the treating psychologist's opinion, the ALJ erred as a matter of law and this matter must be remanded for further proceedings. The ALJ's omission is of particular significance because it undermines her conclusion that Ash was not receiving ongoing treatment.

The State Agency's consulting psychologist's mental residual capacity assessment form completed on September 29, 2008, concluded similarly that the Ash "retains the capacity to understand, remember, carry out and sustain performance of simple routine tasks, complete a normal workday (within physical limits), interact with co-workers/supervisors and adapt to changes/stressors associated with simple routine competitive work activities." (Tr. 439).

---

[4]The provisions of 20 C.F.R. § 404.1527 cited in *Moss* have been amended. *See* 77 Fed. Reg. 10651-01, 10656 (Feb. 23, 2012). The amendments include the redesignation of § 404.1527(d), as § 404.1527(c). *Id*.

6

However, the ALJ discounted that opinion concluding that the findings were unsupported by the objective evidence of record, including the lack of significant on-going therapy. The ALJ's determination regarding the State Agency's consulting psychologist's opinions must be revisited in light of the evidence provided by Zylstra, Ash's treating psychologist.

Ash also maintains the ALJ erred when she failed to include Ash's lumbar degenerative disc disease and radiculopathy as an impairment. Although the ALJ need not discuss every piece of evidence in the record, she must confront the evidence that does not support her conclusion and explain why it was rejected. *See Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir. 2004). The ALJ did not mention the results of a March 2009, magnetic resonance imaging ("MRI") study disclosing bulging of the disc at L3-L4 with moderate foraminal stenosis[5] and slight deformity of the exiting left L3 root. (Tr. 552-53, 574.) Nor did the ALJ mention the electrodiagnostic study performed June 11, 2009, showing chronic and static left L5 radiculopathy.[6] (Tr. 553, 584.) These tests provide objective evidence of such an impairment and the ALJ should have articulated her consideration of it, and its impact, if any, on Ash's RFC to perform light work.[7]

---

[5] Foraminal stenosis is narrowing of the opening through a bone or membrane structure. *See Stedman's Medical Dictionary*, 756, 1832 (28th ed. 2006)

[6] Radiculopathy is a disease of the nerve roots. *Id.* at 1622.

[7] The regulations provide the following definition of light work:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

7

Ash also contends that the ALJ erred in rejecting the functional limitations offered by her treating neurologist, Stewart. In his March 1, 2010, report, Stewart indicated that Ash would likely need the ability to alternate between sitting, standing, and walking at 30 minute intervals due to her underlying lumbar degenerative disc disease and generalized stiffness. (*See* Tr. 553). The ALJ should reexamine her consideration of Stewart's opinion, given the results of the 2009 MRI and the electrodiagnostic test.

With respect to Ash's additional physical limitations, Stewart also indicated in his March 10, 2010, report that in terms of physical functional limitations, Ash

> should use her right upper extremity for only infrequent reaching, grasping, and fingering. She should not keyboard for extended periods of time. She should avoid repetitive flexion or extension of her neck and head, and should avoid the type of static positioning that is often associated with occupations where prolonged periods of time are spent at a video terminal.

(*Id.*)

The ALJ rejected Stewart's opinions relying on inconsistencies between the limitations described in Stewart's March 1, 2010, report and the progress notes. For example, the ALJ cites exhibit 5F stating that the progress notes "reflect significant activity and well controlled pain." (Tr. 20.) However, exhibit 5F consists of 71 pages of notes dating from March 1, 2007 (before the August 21, 2007, date that Ash contends her disability began) through February 4, 2008. The ALJ does not further refine her citation to that exhibit.

---

20 C.F.R. § 404.1567(b).

8

Review of the progress notes establishes that on August 20, 2007, Stewart reported that Ash "continues to be bothered primarily by cervical pain. She also describes residual pain in her upper right extremity." (Tr. 365.) On September 25, 2007, Ash reported that her neck pain was "definitely better." (Tr. 360.) However, on October 30, 2007, she had "many somatic complaints." (Tr. 357.) On November 13, 2007, Stewart wrote that Ash suffers from chronic pain and "currently she is unable to perform the essential functions of her employment with or without reasonable accommodations." (Tr. 356.) On January 8, 2008, Ash's chief complaint was chronic neck pain and she reported: "Pain is distracting and interferes with my mood." (Tr. 353.) Ash reported that she was trying to walk at least two miles per day. (*Id*.) Stewart discussed Ash participating in an interdisciplinary pain management program. (Tr. 354.) She and her husband agreed. (*Id*.) She was referred to Zylstra for a pain psychology assessment. (Tr. 355.)

In his February 29, 2008, evaluation report, Zylstra indicated Ash described her pain as an aching, burning, dull sensation and rated her pain at its best as three to four on a zero to ten-point scale (with zero being no pain and ten being the most excruciating pain imaginable) and at its worst as seven and described it as being quite variable. (Tr. 331.) He also described limitations on Ash's daily activities.

Ash reported despite reductions in, and the cessation of some, activities she continued to be involved with a church group doing Bible study, frequently visited with family, and was involved in some exercise thorough a fitness center on a regular basis. (*Id*.) The ALJ

9

did not note that the pursuit of such activities was part of Ash's treatment plan. Regardless, although Ash's focus was on what she could not do, there is substantial evidence to support the ALJ's conclusion that Ash engaged in significant activity. Nonetheless, the Court cannot find substantial evidence to support the conclusion that Ash's pain was " well-controlled" between August 21, 2007, and February 29, 2008.

The ALJ also relied upon exhibit 22F, (Tr. 565-605), observing that in 2009 Stewart noted that Lyrica was working well with a marked decrease in pain and that Ash was feeling the best that she had in a long time. Review of the 41-page exhibit establishes that at a May 26, 2009, appointment with Stewart, Ash was prescribed Lyrica.[8] (Tr. 588.) On June 11, 2009, she reported that she was definitely feeling better. (Tr. 579.) However, the ALJ has not explained how the improvement of Ash's condition in general impacted on Stewart's opinion. Moreover, if the ALJ determines that a treating physician's opinion should not be afforded controlling weight "the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss,* 555 F.3d at 561; see 20 C.F.R. § 404.1527. In sum, "whenever an ALJ does reject a treating

---

[8] Lyrica's generic name is pregabalin. It is used to treat to treat seizures, pain from damaged nerves (neuropathic pain) that occur from diabetes and shingles (painful rash caused by chickenpox virus), and fibromyalgia (widespread muscle pain). *See* http://www.pdrhealth.com/info/v1us/lyrica (last visited Nov. 15, 2012).

10

source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2)).[9]

Ash also contends that the ALJ's credibility finding is not supported by the record. An ALJ's credibility finding will be afforded "considerable deference" and will be overturned only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (citations omitted). In crafting a credibility determination, the ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (1) [The individual's] daily activities;
>
> (2) The location, duration, frequency, and intensity of . . . pain or other symptoms;
>
> (3) Precipitating and aggravating factors;
>
> (4) The type, dosage, effectiveness, and side effects of any medication . . . ;
>
> (5) Treatment, other than medication, . . . for relief of . . . pain or other symptoms . . . ;
>
> (6) [Other] measures [taken] to relieve pain or other symptoms . . .;
>
> (7) Other factors concerning . . . functional limitations . . . due . . . to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In addition:

---

[9]The provisions of 20 C.F.R. 404.1527 cited in Moss have been amended since that time. See 77 Fed. Reg. 10651-01, 10656 (Feb. 23, 2012). The amendments include the redesignation of 40 4.1527(d) as 404.1527(c). Id.

11

> the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

SSR 96-7p. The ALJ's credibility determination must adequately connect the evidence to the conclusion. *See Myles*, 582 F.3d at 674. The ALJ must reconsider the objective medical evidence in this case. Therefore, she must revisit her credibility determination.

In addition, Ash contends that the ALJ did not adequately analyze her past relevant work in customer service in determining that Ash could return to such work. At step four of the sequential evaluation of social security disability cases the burden of proof is on the claimant. *See Clifford*, 227 F.3d at 868. A claimant may not obtain disability benefits if the claimant can still perform her past work "either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1520. The disability claimant bears the burden of proving that neither alternative applies. *See Briscoe ex rel Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) ("The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." (citation omitted)). It was Ash who had the burden of showing the extent of her limitations and the nature of her past relevant work. Thus, such contention would not provide a basis for remand. However, upon remand the ALJ must re-assess the step four evaluation.

In addition, Ash raises the issue of whether the ALJ erred in refusing Ash's request that the vocational expert's labor statistics be produced at the hearing, relying on *Britton*

12

*v. Astrue*, 521 F.3d 799 (7th Cir. 2008). The Commissioner did not address this argument, indicating only that since the ALJ properly concluded that Ash could return to her past relevant work at step four of the sequential evaluation of jobs, it was unnecessary to consider the ALJ's alternative step five determination. This action is being remanded for further consideration of the medical evidence. Moreover, the ALJ's determination that Ash could perform significant number of other jobs in the national economy is an alternative finding. Therefore, the Court declines to address the issue.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Ash's appeal seeking reversal or remand is **GRANTED** to the extent that this matter is remanded pursuant to sentence 4 of 405(g) for further proceedings that are consistent with this Decision and Order.

The Clerk of Court is **DIRECTED** to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 10th day of December, 2012.

**BY THE COURT**

_____
**Hon. Rudolph T. Randa**
**U.S. District Judge**